**LaJuan DAWES, Appellant,**

v.

**Ralph E. DAWES, Appellee.**

**No. 50920.**

Court of Appeals of Oklahoma, Division No. 2.

Feb. 7, 1978.

Rehearing Denied Feb. 23, 1978.

Certiorari Denied Nov. 6, 1978.

Released for Publication by Order of Court of Appeals Nov. 9, 1978.

---

Bruce W. Gambill, Pawhuska, for appellant.

Robert J. Scott, Pawnee, for appellee.

BRIGHTMIRE, Judge.

Did the female survivor of the shipwrecked marriage receive an equitable share of jointly acquired property upon its dissolution? She says she did not. We think, however, she did and affirm the decree.

I

At the time he married LaJuan Dawes in May 1965 Ralph Dawes owned and operated an oil field tank cleaning and oil hauling business servicing various producing leases in the area. Not long after that Ralph adopted two children LaJuan bore during an earlier marriage.

The tank truck business Ralph had bought in 1962 for $20,000. He bought it on credit and by 1965 had paid off a large portion of the debt. Following the marriage LaJuan began helping her husband with the operation of the business. "I mostly took care of the books," she said, "stayed on the phone, took parts out to them, sent them out on jobs, plus after hours and on weekends I would help him."

In 1969 Ralph began buying stripper wells, and by 1974 had acquired enough oil production to permit the phasing out of the tank truck business. This was completed by 1975 and thereafter Ralph spent six days a week looking after some 20 oil and gas leases which produced an average of 22 barrels of oil a day.

The 38-year-old plaintiff, who had twice before sued Ralph for a divorce, attributed the collapse of the marriage to severe headaches experienced by her husband which brought on variable moods resulting in emotional arguments between the parties sometimes accompanied by verbal· atrocities. Defendant admitted he had had some painful headaches but said they vanished as soon as he separated from plaintiff.

Notwithstanding some health problems in the past—a hysterectomy in 1970, hospitalization for over a month in 1975 for pulmonary tuberculosis, removal of an ovarian cyst shortly before trial—plaintiff still asked the court to give her half of the leases saying she thought she was capable of operating them herself.

After hearing the evidence the trial court concluded that it would be impractical to divide the leases in kind. In furtherance of achieving an appropriate division of property the trial court found the homestead property including the house, its furnishings and a pickup had a value of $66,000; other real and personal property was worth $70,000; and the leases had a fair market value of $155,000—a gross asset value of $291,000. From this was subtracted liabilities of $45,-000 and $10,000 for both attorneys' fees resulting in a net estate value of $236,000. Defendant was found to have separate property in the amount of $10,000 which when subtracted left a net jointly acquired estate of $226,000 to be divided.

To LaJuan the court awarded the homestead, its furnishings, and a 1974 pickup truck. This was $66,000. In addition he awarded her $50,000 "alimony" as a part of the property division specifying that the sum should be paid in 121 monthly installments which "shall not terminate as a result of . . . death or remarriage . . . ."—or a total of $116,000 as her share of the divisible estate.

To Ralph the trial court awarded the leases worth $155,000, other real estate, tools and equipment valued at $70,000, or-

dered him to pay the debts and $5,000 to each of the parties' attorneys.

## II

In her argument LaJuan condemns the property division as being arbitrary and unfair because she says she got only the homestead, lawn tools and pickup worth $63,215.50 and defendant got all the rest of the assets having a net value—after deducting debts and separate property—of $170,000.

The most obvious flaw in LaJuan's analysis of the trial court's efforts is the failure to recognize the $50,000 money judgment awarded her as part of the property division. Such failure is impermissible under the provisions of 12 O.S.1971 § 1289 which authorizes the court to designate part or all of any "alimony" award as division of property or for support. If the money is for support then the payments terminate on death or remarriage. But if the alimony payments must be paid regardless of death or remarriage the award is part of the property division.

When the money judgment is taken into consideration in this case it appears that the court made a nearly equal division of the joint property. As we mentioned earlier the net value of the divisible estate was $226,000. Half of that amount is $113,000. Plaintiff received $66,000 worth of property and a $50,000 money judgment or a total of $116,000. Certainly it cannot be said that such a division is arbitrary or capricious as to LaJuan or that it results from a misapplication of law.

Affirmed.

NEPTUNE, P. J., and BACON, J., concur.